Filed 1/15/14

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| OPTIONAL CAPITAL, INC., et al., | B241244 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC474472) |
| v. | |
| DAS CORPORATION, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle R. Rosenblatt, Judge.  Reversed.

Rehm & Rogari, Ralph Rogari; Law Offices of Mary Lee and Mary Lee for Plaintiffs and Appellants Optional Capital, Inc., Ralph Rogari and Mary Lee.

Law Offices of Gregory M. Lee and Gregory M. Lee, for Defendant and Respondent DAS Corporation.

————————————

Plaintiffs appeal judgment of dismissal of their action for conversion and fraudulent conveyance against defendant DAS Corporation. The trial court granted defendant's special motion to strike pursuant to Code of Civil Procedure section 425.16[1] and sustained defendant's demurrer to plaintiffs' complaint, finding that plaintiffs' causes of action arose out of DAS's settlement of litigation, which was protected activity under section 425.16, and further that Optional's claims were barred by the litigation privilege. We reverse.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case involves an extremely tangled thicket of legal proceedings in both state and federal court, as well as in Switzerland. The judgment on appeal is but one installment in Optional Capital, Inc.'s attempt to recover monies it contends were looted from its corporate coffers in 2000 and 2001.

Plaintiff Optional Capital, Inc. (Optional) is a Korean Corporation. Plaintiffs Ralph Rogari and Mary Lee are attorneys licensed in California who represented Optional in connection with four United States District Court actions. Defendants Erica Kim, Christopher Kim,[2] and Bora Lee (Christopher Kim's wife) (the Kim parties) during the period January 2001 to August 2002 were fiduciaries of Optional. Defendant Alexandria Investments, Inc. (Alexandria) is a California Corporation, and the Kim parties are principals of Alexandria. Defendant DAS Corporation (DAS) is a Korean corporation that conducts extensive business in California manufacturing, selling, and distributing auto parts.

In January 2001, Optional was known as "New Vision Venture Capital Company Ltd." and was a publicly traded venture capital firm whose shares traded on a South Korean stock exchange. In April 2001, pursuant to a conspiracy, DAS and the Kim parties took control of Optional and used their fiduciary positions to issue stock to

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] Christopher Kim is also known as Kyung Joon Kim and KJ Kim.

2

Christopher Kim, convert more than $30 million of property of Optional, and manipulate the market for Optional's stock. Optional alleged some of the proceeds from this scheme were used to pay debts to investors, including DAS. The remaining proceeds were deposited in bank accounts at United Commercial Bank (UCB) in Rowland Heights controlled by the Kim parties. In February 2002, the Kim parties created defendant Alexandria and transferred the money misappropriated from Optional into a bank account in the name of Alexandria at UCB. Defendants used Optional's funds to purchase real property in Beverly Hills and expensive automobiles.

According to plaintiffs, DAS was aware of and participated in the conversion by the Kim parties of more than $35 million of Optional's funds.

On May 30, 2003, DAS filed a complaint in Los Angeles Superior Court, case No. BC296604, against Christopher Kim and Bora Lee (DAS superior court litigation). Alexandria was not a party to that action. In that action, DAS sought to recover 14 billion South Korean Won (KRW) in connection with an investment DAS made in a company affiliated with Christopher Kim and Bora Lee, alleging they solicited funds from investors but instead created sham corporations "with no business except money laundering."

In September 2003, Alexandria transferred more than $15 million of Optional's converted money to a bank account opened at Credit Suisse in Geneva, Switzerland.

Starting in March 2004, based on the conduct of the Kim parties in running Optional, the United States Government commenced forfeiture proceedings in the United States District Court for the Central District of California in three different cases (Nos. CV 04-2788, CV 04-3386 & CV 05-3910)[3] (forfeiture actions). The United States government seized property, including the automobiles in the United States and the

---

[3] The three forfeiture actions were consolidated under number CV-04-2788.

3

Alexandria funds held at Credit Suisse Bank in Geneva, Switzerland.[4]  At the request of the United States Government, the Swiss government froze the Credit Suisse account (Government Freeze).  Both Optional and DAS were claimants in the forfeiture actions arising out of the Kim parties' looting of Optional, and both Optional and DAS filed claims to the various assets, including the monies in the Credit Suisse account.

In 2004, Optional filed a lawsuit against the Kim parties and Alexandria in the United States District Court, seeking damages for fraud and conversion based on the looting of Optional (No. CV 04-3866) (Optional federal court action).

On March 13, 2007, the United States District Court granted the Kim parties' summary judgment motion in the forfeiture actions, and the Ninth Circuit affirmed that decision on October 3, 2008, extinguishing the United States Government's forfeiture claim.

In April 2007, DAS instituted criminal proceedings in Switzerland against Alexandria and Christopher Kim, thereby obtaining a second freeze on the Credit Suisse funds (DAS Freeze).  Although it was aware of the DAS Freeze on the funds, Optional did not take any action on its own in Switzerland to freeze the funds.

On February 4, 2008, the jury returned a verdict in the Optional federal court action, finding that the Kim parties and Alexandria converted approximately $15.5 million from Optional.  Optional served notice of that judgment on the parties in the forfeiture actions.  On April 25, 2008, Optional served a copy of its notice of judgment lien on the parties to the Optional federal court action, and filed a copy of the notice of judgment lien with the California Secretary of State.

Shortly thereafter, DAS sued Optional in Los Angeles Superior Court, alleging that Optional owed DAS a portion of any monies it recovered from the Kim parties and Alexandria pursuant to the terms of a litigation contract.  DAS later dismissed the lawsuit.

---

[4] The Kim parties were represented by defendant Eric Honig in that action. Neither Honig nor the Kim parties are parties to this appeal.

In June 2008, the United States District Court in the Optional federal court action vacated the jury award.

In April 2010, in the DAS superior court litigation, the trial court ordered the parties to mediation. The matter was ultimately settled in November 2010 between the Kim parties and DAS pursuant to a confidential settlement. Alexandria, who was not a party to the lawsuit, was not a party to that settlement.

In December 2010, the Swiss magistrate investigating DAS's criminal action learned that settlement had been made in the DAS superior court litigation. Subsequently, at a hearing held February 1, 2011, with DAS and Alexandria present, the Swiss government lifted the DAS Freeze and the funds on deposit at Credit Suisse were released to DAS. Optional did not participate in these proceedings. On April 4, 2011, DAS withdrew its claims in the forfeiture actions and dismissed the criminal action.

On January 4, 2011, the Ninth Circuit reinstated Optional's recovery on its conversion claim in the Optional federal court action. On February 7, 2011, the United States District Court entered its amended judgment awarding Optional 37.1 billion KRW.

In additional proceedings in the forfeiture actions, the United States District Court found DAS and Optional's claims were extinguished. However, the Ninth Circuit reversed that ruling on January 28, 2011, and remanded the matter for the district court to adjudicate the competing claims of all claimants.[5]

---

[5] DAS has requested that we take judicial notice of proceedings in the forfeiture actions taken November 17, 2011, in which the district court granted DAS's motion to dismiss it from the case based upon the settlement with the Kim parties in the DAS superior court litigation. We take judicial notice of this document. (Evid. Code, §§ 452, 459.)

Additionally, Optional has requested we take judicial notice of further proceedings in the forfeiture actions issued by the district court on May 17, 2013 in which the district court imposed a constructive trust in favor of Optional on, among other things, the funds held in the Credit Suisse account. As these documents relate to issues improperly raised in Optional's reply brief for the first time, by separate order we previously declined to take judicial notice of these documents and granted DAS's motion to strike those arguments in Optional's reply brief raised for the first time.

## 1. *Plaintiffs' Complaint and DAS's Demurrer and Motion to Strike*[6]

On December 1, 2011, plaintiffs filed their complaint stating causes of action for conversion and fraudulent transfer. Plaintiffs alleged that DAS, in conspiracy with Alexandria and the Kim parties, converted its funds, and further that Alexandria did not receive reasonably equivalent value or any consideration for its exchange with DAS, and that the transfer to DAS was made to hinder, delay and defraud plaintiffs. Plaintiffs sought damages, declaratory relief, injunctive relief, imposition of a constructive trust, an accounting, attorney fees, and punitive damages. Rogari and Lee have an interest in the litigation as Optional's attorneys.

On March 27, 2012, DAS filed a special motion to strike, arguing that Optional's complaint for conversion and fraudulent conveyance arose from the settlement of the DAS superior court litigation that resulted in the release of the funds from Credit Suisse Bank, and the action was barred because the settlement was protected activity within the meaning of section 425.16, citing *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953. Further, DAS contended Optional could not establish it would prevail in its claims against DAS because the settlement agreement was protected by the litigation privilege of Civil Code section 47, and the simple transfer of money, without more, did not constitute a fraudulent conveyance because a debtor can prefer one creditor over another.

Optional opposed the motion on the grounds that DAS had not demonstrated Optional's complaint arose from protected activity because Optional's lawsuit was not based upon the settlement, but DAS's conduct in conspiring with Alexandria and the wrongful transfer of funds from the Credit Suisse account.

Simultaneously, DAS filed a demurrer to Optional's complaint, contending that Optional could not establish it was entitled to sole ownership of the funds on deposit at Credit Suisse because it has admitted that DAS also was a competing claimant to those

---

[6] Defendants Eric Honig, Erica Kim and Bora Lee separately filed special motions to strike Optional's complaint. The trial court granted each of these motions, which are not at issue in this appeal.

6

funds; further, Optional's fraudulent conveyance claim failed because a debtor is not precluded from favoring one creditor over another. Optional opposed DAS's demurrer, arguing that it had a lien on the funds by virtue of its judgment, and its fraudulent conveyance claim survived because Optional alleged Alexandria did not receive reasonably equivalent value for transferring the funds to DAS.

The trial court granted DAS's motion to strike, finding that the entirety of Optional's complaint was based upon litigation activity and protected under the anti-SLAPP statute, citing *Seltzer v. Barnes*, *supra*, 182 Cal.App.4th at pp. 962–967, for the proposition that settlement negotiations and agreements were protected activity. The trial court also found Optional's complaint would fail on the merits because DAS's conduct was protected by the litigation privilege as the settlement agreement and the negotiations thereto were conducted in connection with the forfeiture action. The court in particular noted that "[a]s a result of the confidential settlement between DAS and the Kim [parties], including Bora Lee, DAS stopped pursuing the Swiss criminal proceedings against the Kim [parties]. The Swiss government lifted the freeze on the [Credit Suisse] accounts and the Swiss Attorney General ordered that $13 million in those accounts, now the subject of this action, be paid to DAS Corporation." The trial court found that the complaint "essentially seeks to hold" DAS liable for "beating Optional to the funds first," and that the complaint challenged the transfer of funds from the Kim parties to DAS in settlement of a pending suit, which was conduct to achieve the objectives of litigation.

Simultaneously, the trial court sustained DAS's pending demurrer to Optional's complaint, after noting that Optional did not plead that the funds were impressed with a constructive trust or that the lien attached to the funds, and finding Optional's claims were barred by the litigation privilege. The court entered an order noting that the granting of the anti-SLAPP motion "technically rendered" the court's ruling on the demurrer moot.

## DISCUSSION

Optional contends that the trial court erred because its claims for conversion and fraudulent conveyance do not arise from the settlement between DAS and the Kim

7

parties, but from DAS's wrongful possession of funds in which Optional had an interest and wrongful transfer of those funds to prevent Optional from executing on its judgment. DAS contends Optional's claims to the funds arise from the settlement of DAS's claims with the Kim parties, and is thus protected activity. With respect to DAS's demurrer, Optional contends that its claims are not barred by the litigation privilege for the same reasons that its complaint is not subject to a motion to strike. DAS contends the trial court found that in addition to finding the litigation privilege barred Optional's claims, the trial court concluded Optional was not entitled to imposition of a constructive trust on the account.

We conclude that DAS's conduct in obtaining money from Alexandria's Credit Suisse account did not constitute protected activity under section 425.16, Optional has established a reasonable probability of prevailing on the merits because it can trace the funds the Kim parties wrongfully took from Optional to the funds in Alexandria's account, and the litigation privilege does not bar Optional's claims.

## I. Special Motions to Strike[7]

Section 425.16 permits a court to strike any cause of action that arises from the defendant's exercise of his or her constitutionally protected free speech rights or petition for redress of grievances. (§ 425.16, subd. (b)(1); *Flatley v. Mauro* (2006) 39 Cal.4th 299, 311–312.) In ruling on a special motion to strike brought under section 425.16, the trial court must engage in a two-step process. First, the court must determine whether defendant has made a threshold showing that the challenged cause of action "arises from" a protected activity. Second, if the defendant makes this showing, the trial court must determine whether the plaintiff has established a probability of prevailing on the claim. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.) The burden is on the defendant on the first prong to show the action is within the statute; if the defendant

---

[7] Section 425.16 is also known as the "Anti-SLAPP" statute. SLAPP is an acronym for "Strategic Lawsuit Against Public Participation." (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 8, fn.1.)

succeeds, the burden shifts to the plaintiff to establish a probability of prevailing. (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 928.) Normally, if a defendant satisfies the first portion of this test, the trial court next addresses whether it is reasonably probable the plaintiff will prevail on the merits at trial. (§ 425.16, subd. (b)(1).)

In making these determinations, the trial court considers the pleadings, and supporting and opposing affidavits. (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 67.) We review the trial court's ruling on the motion to strike independently under a de novo standard. (*Flatley v. Mauro*, *supra*, 39 Cal.4th at p. 325.) We do not weigh credibility, but accept as true the evidence favorable to plaintiff and evaluate the defendant's evidence only to determine whether it defeats the plaintiff's evidence as a matter of law. (*Ibid*.)

### A. Optional's Claims Do Not Arise from Protected Activity

Subdivision (e) of section 425.16 delineates the type of speech or petitioning activity protected. These acts include (1) written or oral statements "made before a legislative, executive, or judicial proceeding"; (2) written or oral statements "made in connection with an issue under consideration or review by a legislative, executive, or judicial body"; (3) written or oral statements "made in the place open to the public or in a public forum in connection with an issue of public interest"; or (4) "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) Thus, if the speech is made or the activity is conducted in an official proceeding authorized by law, it need not be connected to a public issue, but it is made or conducted apart from an official proceeding, then there is a public issue requirement. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117.)

In addition, courts have not precisely defined the boundaries of a cause of action "arising from" such protected activity. (§ 425.16, subd.(b).) *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 explained that "the statutory phrase 'cause of action . . . arising

9

from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." *Navellier v. Sletten* (2002) 29 Cal.4th 82 cautioned that the "anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Id*. at p. 92.) Thus, whether the plaintiff's lawsuit intended to chill or actually chilled the defendant's conduct is not relevant. (*Equilon Enterprises v. Consumer Cause, Inc.*, *supra*, 29 Cal.4th at p. 58; *City of Cotati*, at p. 75.)

Rather, whether the statute applies is determined from the "principal thrust" or gravamen of the plaintiff's claim. (*Martinez v. Metabolife Internat., Inc*. (2003) 113 Cal.App.4th 181, 188.) For this reason, the sequence in which actions are filed is not determinative of whether a lawsuit is a prohibited suit. The mere fact that a lawsuit was filed after the defendant engaged in protected activity does not establish the complaint *arose from* protected activity under the statute because a cause of action may be triggered by protected activity without arising from it. (*City of Cotati v. Cashman*, *supra*, 29 Cal.4th at pp. 77, 78.)

In *Seltzer v. Barnes*, *supra*, 182 Cal.App.4th 953, the plaintiff Seltzer was involved in a dispute with her homeowners association and tendered a cross-complaint against her to Allstate, her insurer under a homeowners policy. Allstate hired an attorney to defend Seltzer on the cross-complaint, subject to a reservation of rights, taking the position that some of the claims against Seltzer were not covered by her policy. Defendant Barnes represented Allstate in negotiating a settlement of the covered claims by the homeowners association against Seltzer. Seltzer thereafter brought an action against Barnes alleging that Barnes colluded with counsel for the homeowners association to dismiss the covered claims and convert the proceeds of the policies to the association. *Seltzer v. Barnes* held

10

that Barnes's "negotiations with the [Homeowners] Association did constitute petitioning activity on behalf of Allstate, which had ultimate authority over settlement of the covered claims" and that Barnes's "role and the basis for his asserted liability was his negotiation of the agreement, which is conduct within the scope of section 425.16." (*Id*. at pp. 968, 969, fn. 11.)

In *McConnell v. Innovative Artists Talent & Literary Agency, Inc.* (2009) 175 Cal.App.4th 169, two employees of a talent agency filed suit against their employer alleging that their employment contracts were illegal because they included, among other things, clauses that did not permit them to leave at will or take clients with them if they left. Thereafter, the employer sent the agents a letter modifying their job duties, and instructing them not to come into the office, contact clients, or use the company's email or computers. The agents took the position they had been constructively discharged because they were precluded from performing their jobs, and added claims for retaliation and wrongful discharge to their complaints. The employer filed a special motion to strike, arguing that the letter it sent constituted petitioning activity within the anti-SLAPP statute. (*Id*. at pp. 173–174.) The *McConnell* court disagreed, finding the acts underlying the agents' claims of retaliation and wrongful termination did not arise from the letter itself, but from the employer's conduct in modifying the agents' job duties and effectively precluding them from performing any of the ordinary activities of a talent agent. (*Id.* at p. 176.)

In *Paul v. Friedman* (2002) 95 Cal.App.4th 853, a securities broker alleged that an attorney, in litigating a prior arbitration proceeding, conducted an intrusive investigation into the broker's personal life and disclosed details of the broker's life that were not relevant to issues in the arbitration proceedings. (*Id.* at pp. 857–858). The *Paul* court found that the attorney's conduct was not protected activity within section 425.16 because the communication must occur in connection with an issue under consideration or review in the proceeding. Thus, while the attorney's investigative conduct may have been "'in

connection with a[] . . . proceeding,'" it was not "'in connection with' . . . an issue under review in that proceeding," and therefore was not protected activity. (*Id.* at p. 867.)

Here, unlike *Seltzer v. Barnes*, *supra*, 182 Cal.App.4th 953, Optional is not suing DAS for settling its dispute with the Kim parties. Rather, as *McConnell v. Innovative Artists Talent & Literary Agency, Inc.*, *supra*, 175 Cal.App.4th 169 and *Paul v. Friedman*, *supra*, 95 Cal.App.4th 853 establish, conduct is not automatically protected merely because it is related to pending litigation; the conduct must arise from the litigation. Here, Optional's complaint seeks to recover monies looted from it and wrongfully obtained by DAS from the Credit Suisse account. The only connection between the settlement in the DAS superior court litigation and Optional's claims here is that the settlement was used as a device to permit DAS to persuade the Swiss government to release the funds, thereby depriving Optional of funds to satisfy its judgment. Indeed, Alexandria, the sole possessor of the funds in the Credit Suisse Bank account, was not a party to DAS superior court litigation.

### B. Reasonable Probability of Prevailing on the Merits

The tort of conversion is an "act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." (*Oakes v. Suelynn Corp.* (1972) 24 Cal.App.3d 271, 278; *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 119.) To establish conversion, the plaintiff must allege the plaintiff's right of ownership to the personal property, defendant's control of the property in a manner inconsistent with the plaintiff's rights, and damages. (*Fremont*, at p. 119.) "A cause of action for conversion of money can be stated only where a defendant interferes with the plaintiff's *possessory interest* in a specific, identifiable sum, such as when a trustee or agent misappropriates the money entrusted to him." (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 284, and cases there cited.) "[U]nless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment," money cannot be the subject of a cause of action for conversion. (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th

12

1457, 1491; see also *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 395.)

California has adopted the Uniform Fraudulent Transfer Act (Civ. Code §§ 3439– 3439.12). The purpose of the Act is "'to prevent debtors from placing property which legitimately should be available for the satisfaction of demands of creditors beyond their reach . . . .'" (*Chichester v. Mason* (1941) 43 Cal.App.2d 577, 584.) Civil Code section 3439.04 provides two methods of establishing a fraudulent transfer. Actual fraud, as defined in subdivision (a)(1), is a transfer made with "actual intent to hinder, delay or defraud any creditor of the debtor." Constructive fraud, as defined in subdivision (a)(2), requires a showing that the debtor did not receive "reasonably equivalent" value for the transfer, and the transfer was made when the debtor "(A) [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction"; or (B) the debtor "[i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due." Section 3439.04 is construed to mean a transfer is fraudulent if the provisions of either subdivision (a)(1) or subdivision (a)(2) are satisfied. (*Monastra v. Konica Business Machines U.S.A., Inc.* (1996) 43 Cal.App.4th 1628, 1635; *Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1020 [proof of actual intent to defraud alone is sufficient to establish a fraudulent transfer].)

"One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." (Civ. Code, § 2224.) "The case law explains that in order to create a constructive trust as defined in section 2224, three conditions must be satisfied: the existence of a res (property or some interest in the property); the plaintiff's right to that res; and the defendant's acquisition of the res by some wrongful act. [Citations.]" (*Calistoga Civic Club v. City of Calistoga* (1983) 143 Cal.App.3d 111,

13

115.) A constructive trust "may be imposed in practically any case where there has been a wrongful acquisition or detention of property to which another is entitled, but the party attempting to establish the constructive trust must establish the claim by clear and convincing evidence." (*Taylor v. Fields* (1986) 178 Cal.App.3d 653, 665.) Funds may be recoverable under a constructive trust theory where the plaintiff can trace the funds to monies in the defendant's possession. (See *Heckmann v. Ahmanson* (1985) 168 Cal.App.3d 119, 135.)

Here, Optional has established a reasonable probability of prevailing on the merits. Plaintiffs alleged that DAS, in conspiracy with Alexandria and the Kim parties, converted its funds, and further that Alexandria did not receive reasonably equivalent value or any consideration for its exchange with DAS, and that the transfer was made to DAS to hinder, delay and defraud plaintiffs. Optional has pleaded and shown that the Kim parties—not Alexandria, the ultimate holder of the funds—were fiduciaries of Optional and took a specific sum of money from Optional in breach of their fiduciary duties before transferring the spoils of their activities to California, establishing the elements of conversion. Further, Optional has pleaded and shown that the Kim parties were indebted to it, conspired with and transferred the monies to Alexandria to place the funds out of Optional's reach, and were rendered insolvent by such transfer. Finally, Optional has pleaded and shown that it can trace the funds taken from it in South Korea to the Credit Suisse account from which DAS obtained the monies, and thus imposition of a constructive trust on the funds now in DAS's possession may be appropriate.

DAS's arguments to the contrary do not change this result. DAS has argued that it merely, as a separate creditor of Optional, beat Optional to the funds and that Optional slept on its rights by failing to proceed in the Swiss courts; as a result, the fact DAS had a competing claim to the funds does not resolve the issue of Optional's entitlement. Further, DAS argues the fact that it prevailed over Optional fails to establish fraudulent conveyance because a creditor can prefer one creditor over another. DAS's arguments fail because DAS is not merely another creditor of the Kim parties (and by extension, the

14

dummy corporation Alexandria); rather, as Optional has alleged DAS, the Kim parties, and Alexandria were part of a conspiracy to defraud Optional of its money. Thus, DAS did not merely "beat" Optional to the Credit Suisse account, but instead participated in a scheme to prevent Optional from obtaining the monies in the forfeiture proceeding.

DAS also argues the mediation privilege protects it because under Evidence Code section 1119, events occurring in a mediation are confidential. This argument is misplaced because Optional's claims are not based upon statements made in the settlement conference, but upon wrongful conduct external to the DAS superior court litigation settlement. Lastly, DAS argues without citation to any authority that Optional's lien on the funds does not "relate back" under Code of Civil Procedure section 697.510[8] because of the intervening reversal and reinstatement of Optional's judgment in the district court and Ninth Circuit, and further that Optional's California judgment cannot be enforced in Switzerland. This argument is misplaced because Optional is not seeking to enforce its judgment in the Optional federal court action with the instant state court action, but rather to impose a constructive trust on the funds that DAS misappropriated.

## II. Das's Demurrer

### A. Standard of Review

The function of a demurrer is to test the sufficiency of a pleading as a matter of law, and we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend. (*Holiday Matinee, Inc. v. Rambus, Inc*. (2004) 118 Cal.App.4th 1413, 1420.) A complaint "is sufficient if it alleges ultimate rather than evidentiary facts," but the plaintiff must set forth the essential facts of his or her case "'"'with reasonable precision and with particularity sufficient to acquaint [the] defendant with the nature, source, and extent'"'" of the plaintiff's claim. Legal conclusions are

---

[8] Section 697.510 relates to the perfection of a judgment lien for personal property by filing a notice with the Secretary of State and provides at subdivision (b) that such a lien expires after five years unless a continuation statement is filed with the Secretary of State.

15

insufficient.  (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 550 & 551, fn. 5.)  "We assume the truth of the allegations in the complaint, but do not assume the truth of contentions, deductions, or conclusions of law."  The trial court errs in sustaining a demurrer "if the plaintiff has stated a cause of action under any possible legal theory, and it is an abuse of discretion for the court to sustain a demurrer without leave to amend if the plaintiff has shown there is a reasonable possibility a defect can be cured by amendment."  (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.)

### B. Litigation Privilege

Optional argues that the litigation privilege does not bar its claims for conversion and fraudulent conveyance because the torts committed are not torts arising from statements, publications, or communicative conduct.  Instead, the transfer of the funds from Alexandria to DAS was a noncommunicative act not subject to the litigation privilege.  DAS contends all of the acts complained of arose from the confidential settlement agreement in the DAS superior court litigation and are protected by the litigation privilege; further, the trial court relied on the additional ground that Optional could not state a claim for conversion because it could not identify the specific funds.

The litigation privilege of Civil Code section 47, subdivision (b) "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved."  (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.)  "[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action."  (*Ibid*.)  Section 47, subdivision (b), is intended to "afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, [and] to give finality to

16

judgments." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1063.) The privilege is broadly applied to promote effective judicial proceedings by encouraging full communication, and applies to civil actions based upon perjury. (*Flatley v. Mauro*, *supra*, 39 Cal.4th at p. 322; *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 955.)

In *Seltzer v. Barnes*, *supra*, 182 Cal.App.4th 953, the court observed that the litigation privilege applies to statements made during settlement negotiations. (*Id.* at p. 970.) In *Jacob B. v. County of Shasta*, *supra*, 40 Cal.4th 948, the court elaborated that "'if the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct . . . . Stated another way, unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies.'" (*Id.* at p. 957.)

As we have concluded that Optional's complaint sufficiently alleges claims on the merits, we only address whether the litigation privilege applies to bar its claims as a matter of law. With respect to the privilege, Optional has alleged an independent, noncommunicative, wrongful act: namely, DAS's conspiracy with the Kim parties and Alexandria to assert of dominion and control over the funds in which Optional has a judgment lien and transfer of those funds out of Optional's reach in violation of rights as a judgment creditor of Alexandria. Thus, the litigation privilege does not apply.

## DISPOSITION

The judgment is reversed. Appellants are to recover their costs on appeal.

CERTIFIED FOR PUBLICATION.


JOHNSON, J.


We concur:


ROTHSCHILD, Acting P. J.          CHANEY, J.

17