Filed 3/10/16  Tri-Tool Inc. v. Hansen CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| TRI-TOOL INC., | C077213 |
| Plaintiff and Respondent, | (Super. Ct. No. 34200900054045CUBCGDS) |
| v. | |
| ADELE HANSEN et al., | |
| Defendants and Appellants. | |

Defendants and appellants Adele Hansen, Carol P. Lowe, Barbara Z. Stahr, Taber Family Trust, Diana M. Weed, Timothy C. Weed, Steve Weiss, David Ziilch Trust and Steven Tozier (together, the CP18 defendants) appeal from the trial court's denial of their special motion to strike under Code of Civil Procedure section 425.16 (section 425.16)[1],

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

1

the so-called anti-SLAPP statute.[2]  We conclude that the challenged causes of action do not arise from protected activity and affirm the denial.

## I.  BACKGROUND

This appeal is the latest chapter in plaintiff and respondent Tri Tool Inc.'s (Tri Tool) ongoing effort to enforce a promissory note issued by co-defendant Copeland Properties Three, L.P. (CP3), a single asset entity which is not a party to this appeal. Although the case comes to us with a complex procedural history, the issues on appeal are relatively narrow.  Accordingly, we summarize only those facts essential to an understanding of the issues before us.

A.      *The Underlying Transaction*

CP3 owned certain commercial real property in Rancho Cordova, California.  Tri Tool entered into an agreement to purchase the property in November 2006.  During the due diligence period, Tri Tool discovered that a neighboring property owner claimed an unrecorded easement over the property.  As a condition of closing, CP3 gave Tri Tool a promissory note in the amount of $200,000 and promised to remove the cloud on title within two years.  If CP3 failed to clear title during the two year period, the promissory note would become due and payable.  The note provides for annual interest at 10% and attorneys' fees.  The sale of the property closed on April 5, 2007.

B.      *Litigation Begins—Trial Court Proceedings*

CP3 failed to remove the cloud on title, and failed to pay the promissory note.  Tri Tool commenced the present action in Sacramento Superior Court to enforce the note. Tri Tool's original complaint named CP3, as maker of the note, and Charles and Donald Copeland, as guarantors.  Charles Copeland is the majority owner of Copeland Realty Inc., CP3's general partner.

---

[2] SLAPP is an acronym for "strategic lawsuit against public participation."  (*Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 280.)

During discovery, Tri Tool learned that CP3 was dissolved shortly after the close of escrow for the Rancho Cordova property. Tri Tool also discovered that CP3 transferred all of its assets prior to dissolution, rendering CP3 judgment-proof. Specifically, Tri Tool learned that CP3 transferred the proceeds of an approximately $1.8 million loan from Pacific Western Bank (PWB) to an entity called Copeland Properties 14, L.P. (CP14). The money was used to purchase real property in North Carolina, which was held in the name of another Copeland entity, Copeland Properties 18, L.P. (CP 18). CP3 later repaid the PWB loan with proceeds from the sale of the Rancho Cordova property.

Tri Tool also learned that CP18 financed the balance of the purchase price for the North Carolina property with a seller carryback loan in the amount of $333,000. CP3 repaid the seller carryback loan with proceeds from the sale of the Rancho Cordova property. CP3 then transferred the capital accounts of CP3's limited partners to CP18, leaving CP3 insolvent. CP3 was dissolved by the end of 2007.

On November 24, 2010, the trial court granted Tri Tool's motion for summary judgment against CP3 and the Copelands. The trial court's order has not been reduced to judgment.

C.    *The SEC Intervenes—The Federal Action*

On October 18, 2011, the Securities and Exchange Commission (SEC) filed a complaint against Charles Copeland and related entities in the United States District Court for the Central District of California, Eastern Division (the federal action).[3]  The

---

[3] We have been provided with some, but not all, of the relevant filings from the federal court proceedings. We exercise our discretion to take judicial notice, on our own motion, of the SEC's complaint in the federal action (but not the truth of any facts alleged therein), Tri Tool's motion for an order modifying the blanket stay and Judge Real's order denying the motion. (Evid. Code, § 452, subd. (d)(2).)

3

SEC's complaint alleges that Charles Copeland violated federal securities laws in connection with the offer and sale of interests in various limited partnerships.

On October 19, 2011, the Honorable Manuel Real entered a judgment of permanent injunction and other relief against Charles Copeland and the related Copeland entities. As part of the judgment, the Copeland entities were placed into receivership and a blanket stay was imposed enjoining all actions against the Copeland entities during the pendency of the receivership.

On June 26, 2013, Tri Tool filed a motion to modify the blanket stay as to CP3, CP14, CP18 and others so that Tri Tool could continue to pursue claims against them in superior court. Judge Real denied the motion.

On August 16, 2013, the receiver filed a motion for an order approving the distribution of CP18's assets to its limited partners and authorizing the cancellation of CP18 as an entity. The CP18 defendants joined the receiver's motion.[4] Tri Tool opposed the motion.

On November 5, 2013, Judge Real entered an order finding, inter alia, that "Tri Tool's claim against CP18 based on the alleged fraudulent transfer by CP3 to CP18 of proceeds of a Pacific Western Bank loan is time-barred." "However," Judge Real continued, "Tri Tool's claim based on the alleged fraudulent transfer from CP3 to CP18 of $330,000 for payment of a debt owed by CP18 to the seller of property in Wendover,

---

[4] The joinder motion is styled as a "Partial Joinder By Certain Limited Partners of Copeland Properties 18, L.P. in Receiver's Motion for Distribution of Copeland 18 L.P. Assets." The joinder motion does not specifically identify the CP18 defendants as the moving parties; however, the parties appear to agree that the CP18 defendants were either among or the same as the "certain limited partners" joining in the receiver's motion. Although we generally disregard unsupported assertions (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856), where the parties agree, we accept their agreed facts as mutual concessions. (*Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 175, fn. 3.) Accordingly, we accept the parties' assertions that the CP18 defendants joined in the receiver's motion.

4

North Carolina (the 'Wendover Note') is not time-barred." Accordingly, Judge Real granted the receiver's motion subject to further briefing on the merits of Tri Tool's claim based on the alleged fraudulent transfer of $330,000 from CP3 to CP18.

On January 9, 2014, Judge Real entered an order rejecting Tri Tool's remaining claim on the merits. Judge Real analyzed Tri Tool's claims under the Uniform Fraudulent Transfer Act (UFTA), Civil Code section 3439 et seq. and concluded: "The evidence does not support a finding that CP3's payment to CP18 of $333,544.11 used by CP18 to cancel the Wendover Note was a fraudulent transfer." Accordingly, Judge Real rejected Tri Tool's claim on the merits, thereby paving the way for the receiver to distribute C18's assets to the CP18 defendants. Tri Tool is apparently appealing Judge Real's order to the Ninth Circuit.

D.      *The Third Amended Complaint—Tri Tool Returns to State Court*

Tri Tool returned to superior court and filed a third amended complaint—the operative pleading for purposes of this appeal—naming the CP18 defendants as defendants.[5] The third amended complaint alleges, in part: "On or about December 7, 2012, CP18 closed escrow, selling [the North Carolina property]. On or about January 2014, Thomas Hebrank, Receiver . . . distributed the sales proceeds to the [CP18 defendants and others]." The complaint does not allege that the CP18 defendants were limited partners in CP3 or otherwise received money directly from CP3.

The complaint asserts two purported causes of action against the CP18 defendants under UFTA:[6] (1) a fourth cause of action for actual fraudulent transfer (Civ. Code,

---

[5] Tri Tool apparently filed a fourth amended complaint while the CP18 defendants' anti-SLAPP motion was pending. We express no opinion as to the propriety or validity of the fourth amended complaint, which does not appear in the record.

[6] After this case was filed, the Legislature passed legislation changing the name of the UFTA to the "Uniform Voidable Transaction Act" and making other amendments to the

5

§ 3439.04), and (2) a fifth cause of action for constructive fraudulent transfer (Civ. Code, § 3439.05). Both causes of action are based on the above-described transfers from CP3 to CP14 and CP18. The complaint does not allege that the CP18 defendants were involved in any of the allegedly fraudulent transfers, other than as recipients of the assets ultimately distributed by the receiver. The complaint seeks "imposition of a constructive trust over CP18's assets that were transferred to the [CP18 defendants]."

E.     *The Anti-SLAPP motion*

On June 6, 2014, the CP18 defendants filed an anti-SLAPP motion directed to Tri Tool's fourth and fifth causes of action. The CP18 defendants' motion argued, inter alia, that Tri Tool's claims arose from protected activity pursuant to section 425.16. Specifically, the CP18 defendants argued that Tri Tool's complaint was based on protected litigation activity in the federal action; namely, the receiver's successful motion to distribute CP18's assets to the CP18 defendants. The CP18 defendants also argued that Tri Tool could not show a probability of prevailing because its claims were barred by collateral estoppel and the statute of limitations. The CP18 defendants' motion was accompanied by a request for judicial notice of various pleadings and orders in the federal action. A joinder motion was not among those pleadings.

Tri Tool opposed the motion, arguing that the gravamen of its claims against the CP18 defendants was the allegedly fraudulent transfer of CP3's assets to CP14 and CP18 in 2007, not the ultimate distribution of CP18's assets by the receiver. Tri Tool also argued that section 425.16 did not apply, because the distributions were not the result of the CP18 defendants' free speech or petitioning activities, but the receiver's.

In connection with the opposition, Tri Tool submitted the declaration of special projects manager Frank Wernette. Wernette's declaration describes the circumstances

statutory framework. (Stats. 2015, ch. 44, § 2.) These amendments became effective on January 1, 2016. (Civ. Code, § 3439.)

6

giving rise to the promissory note and avers: "CP3 breached its promise to pay Tri Tool $200,000.00, causing Tri Tool to institute the instant litigation." Wernette's declaration does not say anything about the federal action.

Tri Tool also submitted the declaration of its trial counsel, Rollie A. Peterson. Peterson's declaration describes Tri Tool's discovery efforts in painstaking detail, focusing on the records and deposition testimony evidencing the allegedly fraudulent transfers from CP3 to CP14 and CP18. Peterson's declaration focuses entirely on the alleged fraudulent transfers in 2007, and makes no mention of the federal action.

The CP18 defendants filed a reply to Tri Tool's opposition. The CP18 defendants' reply was accompanied by a supplemental request for judicial notice, seeking judicial notice of the joinder motion in the federal action.

The CP18 defendants' anti-SLAPP motion was heard on August 14, 2014. Following oral argument, the trial court issued an order denying the motion. In the order, the trial court concluded that the CP18 defendants failed to show that Tri Tool's causes of action arise from their free speech or petition activities. The trial court explained: "As the court reads the fourth and fifth causes of action, Tri-Tool alleges that Defendants engaged in fraudulent conduct by participating in a scheme to transfer CP3's assets to other entities and individuals. Defendants' allegedly fraudulent conduct was completed in 2007—*before* the Federal Action commenced or the Receiver moved Judge Real to approve of any distribution to Defendants."

The trial court went on to say: "The fraudulent transfers and the ultimate distributions to Defendants appear to be related events in that the liquidation of CP3's principal asset yielded the funds that were transferred and ultimately distributed in the Federal Action. Nonetheless, Defendants' liability is predicated on their role in the fraudulent transfers, not the subsequent distributions. Because the fraudulent transfers are alleged to have occurred before the Federal Action commenced, the court discerns no basis upon which to conclude that the causes of action against Defendants somehow arise

7

from activities in the Federal Action, much less from Defendants' free-speech or petition activities in the Federal Action.

"Even if the Receiver's distributions to Defendants were the gravamen of Tri-Tool's fourth and fifth causes of action," the trial court continued, "the court would deny the motion on grounds that the distributions do not arise from Defendants' free-speech or petition activities. It was the receiver who sought the distributions in federal court, not Defendants. Defendants do not argue in their moving papers that they appeared in the Federal Action or otherwise sought a judicial determination that they were entitled to benefit from the distribution. In other words, Defendants did not speak to the federal court or petition the court to take or refrain from any action."

In reaching this conclusion, the trial court disregarded the joinder attached to the CP18 defendants' supplemental request for judicial notice, stating: "Defendants were required to demonstrate with their moving papers in the instant motion their purported free-speech and petition activities, and the Partial Joinder is not merely a rebuttal to issues raised in the Opposition. As a result, Tri-Tool has not had a fair opportunity to respond to Defendants' arguments based on the Partial Joinder, and the court disregards it."[7]

The CP18 defendants filed a timely notice of appeal.

## II. DISCUSSION

The CP18 defendants contend the trial court erred in denying their anti-SLAPP motion. They argue that Tri Tool's causes of action arise from protected activity because Tri Tool seeks a constructive trust over money the CP18 defendants received as a result of the receiver's motion in the federal action, in which the CP18 defendants joined. The CP18 defendants also argue for the first time in their reply brief that the trial court abused

---

[7] The trial court granted the parties' other requests for judicial notice.

8

its discretion by denying their supplemental request for judicial notice of the joinder motion.

We address these contentions in reverse order. We conclude that the CP18 defendants fail to demonstrate that the trial court abused its discretion in denying their supplemental request for judicial notice, and therefore, the joinder motion is not properly before us. In the absence of any showing that the CP18 defendants joined the receiver's motion, or otherwise participated in the federal action, we further conclude that the CP18 defendants fail to carry their initial burden of demonstrating that they have standing to bring an anti-SLAPP motion. Although we need not reach the merits of the CP18 defendants' motion, we further conclude that the gravamen of Tri Tool's complaint was the allegedly fraudulent transfer of CP3's assets to CP14 and CP18, and not the CP18 defendants' participation in the federal action.

A. *The Anti-SLAPP Statute*

"A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109, fn. 1.) The Legislature enacted [section 425.16]—known as the anti-SLAPP statute—to provide a procedural process to dispose of lawsuits that brought to chill the valid exercise of constitutional rights. (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 865.)

"In evaluating an anti-SLAPP motion, the trial court first determines whether the defendant has made a threshold showing that the challenged cause of action arises from protected activity. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) Under [section 425.16], '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . shall be subject to a special motion to strike . . . .' ([§ 425.16], subd. (b)(1).) 'A cause of action "arising from" defendant's litigation activity may appropriately be the subject of a

9

section 425.16 motion to strike.' (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 648, disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 68, fn. 5.) 'Any act' includes communicative conduct such as the filing, funding, and prosecution of a civil action. (*Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 17-19.) This includes qualifying acts committed by attorneys in representing clients in litigation. (See, e.g., *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1086; *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1418-1420.)

"If the court finds the defendant has made the threshold showing, it determines then whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67.) 'In order to establish a probability of prevailing on the claim (§ 425.16, subd. (b)(1)), a plaintiff responding to an anti-SLAPP motion must " 'state[] and substantiate[] a legally sufficient claim.' " [Citations.] Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.]' (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056.)

On appeal from an order denying a special motion to strike, "[w]e independently review the record to determine whether the asserted causes of action arise from the defendant's free speech or petitioning activity, and, if so, whether the plaintiff has shown a probability of prevailing. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3; *HMS Capitol, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.) We consider 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b)(2); see *Flatley v. Mauro* (2006) 39 Cal.4th 299, 326.) We do not reweigh the evidence, but accept as true all evidence favorable to the plaintiff and evaluate the defendant's

10

evidence only to determine if it has defeated the evidence submitted by the plaintiff as a matter of law.  (*Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 105-106; *Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 573-574.)  If the trial court's decision denying an anti-SLAPP motion is correct on any theory applicable to the case, we may affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion.  (*Robles v. Chalilpoyil, supra,* at p. 573.)"  (*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1306-1307.)

B.     *The CP18 Defendants Fail to Demonstrate That They Engaged in Protected Activity*

Section 425.16, subdivision (b)(1) provides that a special motion to strike may be brought in response to "[a] cause of action *against a person* arising from any act *of that person* in furtherance of the person's right of petition or free speech."  (§ 425.16, subd. (b)(1), italics added.)  As our Supreme Court has explained, "[T]he statutory phrase 'cause of action . . . arising from' means simply that *the defendant's act* underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.  [Citation.]  In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance *of the defendant's* right of petition or free speech."  (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78, some italics added.)  Thus, the anti-SLAPP statute expressly authorizes only parties who have *themselves* engaged in free speech or petitioning activities to bring a special motion to strike.  (§ 425.16, subd. (b)(1); see also *Shekhter v. Financial Indemnity Co.* (2001) 89 Cal.App.4th 141, 153 [examining section 425.16's legislative history and concluding that "the person whose exercise of free expression or petition rights resulted in their being sued can bring the special motion to strike"]; and cf. *Foundation for Taxpayer and Consumer Rights v. Garamendi* (2005) 132 Cal.App.4th 1375, 1392 [intervener on the side of the defense lacked standing to bring an anti-SLAPP motion as a defendant].)

11

The CP18 defendants contend they engaged in protected petitioning activity by joining the receiver's motion to distribute CP18's assets. However, the CP18 defendants failed to timely request that the trial court take judicial notice of the joinder motion. Even now on appeal, the CP18 defendants do not ask us to take judicial notice of the joinder motion. Instead, they argue for the first time in their reply brief that the trial court abused its discretion by disregarding the joinder motion. "It is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party." (*People v. Tully* (2012) 54 Cal.4th 952, 1075.) We therefore reject the CP18 defendants' untimely challenge to the denial of their supplemental request for judicial notice.[8]

Having failed to demonstrate that the trial court abused its discretion in denying their supplemental request for judicial notice, and having failed to renew their request for judicial notice with this court, the CP18 defendants have also failed to properly put the joinder motion before us. (See *Hensel Phelps Construction Co. v. San Diego Unified Port Dist.* (2011) 197 Cal.App.4th 1020, 1028, fn. 9 [declining to consider documents relied upon in appellate briefs where appellant did not challenge trial court's denial of request for judicial notice or renew request with court of appeal].) In the absence of a proper showing that the CP18 defendants joined in the receiver's motion to distribute CP18's assets, or otherwise participated in the federal action, the CP18 defendants have failed to carry their initial burden of demonstrating that Tri Tool's causes of action arise from *the CP18 defendants'* protected petitioning activity, rather than the receiver's.

---

[8] The CP18 defendants insist that Tri Tool knew about the joinder motion, since the motion was served on Tri Tool in the federal action. That Tri Tool may have been aware of the joinder motion does not change the fact that the CP18 defendants had the initial burden of showing, in their moving papers, that Tri Tool's causes of action arose from protected activity. (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67.)

(§ 425.16, subd. (b)(1); *City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 78.)  Put another way, the CP18 defendants have failed to demonstrate that they have standing to bring a special motion to strike.  We therefore conclude the trial court properly denied the CP18 defendants' motion.  But even assuming arguendo that the joinder motion was properly before us, we would still affirm on the grounds that Tri Tool's causes of action do not arise from protected activity.

## C.      Tri Tool's Causes of Action Do Not Arise from Protected Activity

"The sole inquiry under the first prong of the anti-SLAPP statute is whether the plaintiff's claims arise from protected speech or petitioning activity.  [Citation.]  Our focus is on the principal thrust or gravamen of the causes of action, i.e., the allegedly wrongful and injury-producing conduct that provides the foundation for the claims." (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490-491 (*Castleman*).)  "If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute."  (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272; *Martinez v. Metabolife Internat. Inc.* (2003) 113 Cal.App.4th 181, 188 ["when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute"].)  "We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.' [Citation.]"  *Castleman, supra,* 216 Cal.App.4th at p. 491.)

The CP18 defendants argue that Tri Tool's causes of action arise from protected activity because they seek a constructive trust on money the CP18 defendants received as a result of the receiver's motion in the federal action, in which the CP18 defendants

13

joined. Assuming arguendo that the joinder motion is properly before us, we conclude that Tri Tool's causes of action are based on the alleged fraudulent transfers in 2007, not the CP18 defendants' supposed petitioning activity in the federal action.

We acknowledge that Tri Tool's causes of action against the CP18 defendants were prompted by the receiver's motion, in which the CP18 purportedly joined. We assume for the sake of argument that the receiver's motion constitutes protected litigation activity. (But see *City of Chula Vista v. Gutierrez* (2012) 207 Cal.App.4th 681, 685 ["A receiver is an agent and officer of the court, and is under the control and supervision of the court. ([§ 568]; Cal. Rules of Court, rule 3.1179)"].) Even so, "the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. [Citation.] Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89; see also *Optional Capital, Inc. v. DAS Corp.* (2014) 222 Cal.App.4th 1388, 1399 (*Optional Capital*) ["The mere fact that a lawsuit was filed after the defendant engaged in protected activity does not establish the complaint *arose from* protected activity under the statute because a cause of action may be triggered by protected activity without arising from it. [Citation.]"].) Here, though Tri Tool's causes of action against the CP18 defendants may have been *triggered* by protected activity in the federal action, nothing suggests that they *target* protected activity. To the contrary, the parties' pleadings, declarations and other supporting documents confirm that Tri Tool's causes of action target the alleged fraudulent transfers.

The complaint alleges the Copelands orchestrated a scheme to transfer CP3's assets to related entities and individuals and then dissolve the limited partnership, thereby delaying, hindering or defrauding CP3's creditors. According to the complaint, CP3 agreed to give Tri Tool a promissory note as a condition of closing in February 2007. CP3 then transferred the proceeds of the PWB loan to CP14, and acquired the

14

North Carolina property for CP18 in March 2007, using approximately $1.8 million from PWB and an additional $330,000 in seller carryback financing. The sale of the Rancho Cordova property to Tri Tool closed in April 2007. After the close of escrow, CP3 immediately repaid the PWB loan using proceeds from the sale of the property, then transferred the capital accounts of all but one limited partner to CP18. In the weeks that followed, CP3 returned the remaining limited partner's investment and repaid the seller carryback loan for the purchase of the North Carolina property. The complaint alleges that CP3 received no consideration for any of the above-described transfers. By May 29, 2007, less than two months after the close of escrow for the sale of the Rancho Cordova property, CP3 was insolvent. By the end of 2007, CP3 had been dissolved. The complaint alleges the Copelands transferred CP3's assets to CP14 and CP18 with actual intent to hinder, delay or defraud CP3's creditors, including Tri Tool. According to Tri Tool, "Plaintiff's claims . . . arose after April 6, 2007, when CP3 transferred its partners' equity to CP18 in exchange for forgiveness of debt and paid CP18's debts, in excess of $2,253,544.11." Although the complaint refers to the federal action, the core injury-producing conduct that forms the basis for the complaint is the alleged fraudulent transfer of CP3's assets to CP18, which rendered CP3 insolvent and unable to pay the note. The alleged fraudulent transfers are not protected activity within the meaning of section 425.16. (See *Personal Court Reporters, Inc. v. Rand* (2012) 205 Cal.App.4th 182, 190 [cause of action for breach of contract was based on nonprotected activity of the nonpayment of overdue invoices]; *Applied Business Software, Inc. v. Pacific Mortgage Exchange, Inc.* (2008) 164 Cal.App.4th 1108, 1117 [breach of contract suit based solely on defendant's alleged failure to comply with settlement agreement not based on protected activity].) We therefore conclude that the gravamen or principal thrust of Tri Tool's causes of action against the CP18 defendants is the alleged fraudulent transfer of CP3's assets to CP18, and not the CP18 defendants' participation in the federal action. (See *Episcopal Church Cases* (2009) 45 Cal.4th 467, 478 [where

15

gravamen or principal thrust of action is a property dispute, "The additional fact that protected activity may lurk in the background—and may explain why the rift between the parties arose in the first place—does not transform a property dispute into a SLAPP suit"].)

We find support for our conclusion in *Optional Capital, supra.* There, following "an extremely tangled thicket of legal proceedings in both state and federal court, as well as in Switzerland," the plaintiff corporation and its attorneys sued the defendant to recover money the defendant allegedly looted from the corporate plaintiff. (*Optional Capital, supra,* 222 Cal.App.4th at p. 1392.) The trial court granted the defendant's special motion to strike, on the basis that the complaint for conversion and fraudulent transfer arose from a settlement agreement that resulted in the release of funds from a Swiss bank. The court of appeal reversed, reasoning that the plaintiffs were not suing because of the settlement but in order to obtain money wrongfully obtained by the defendant. (*Id.* at pp. 1400-1401.) The court found that the complaint was not based on the protected activity of the settlement agreement because "[t]he only connection between the settlement . . . and [the plaintiffs'] claims . . . is that the settlement was used as a device to permit [the defendant] to persuade the Swiss government to release the funds, thereby depriving [the corporate plaintiff] of funds to satisfy its judgment." (*Id.* at p. 1401.)

Likewise, in the present case the receiver's motion was merely the "device" by which the CP18 defendants received CP18's assets, thereby assuming the status of subsequent transferees. As subsequent transferees, the CP18 defendants' liability, if any, rests entirely on the voidability of the initial transfers to CP14 and CP18. (Civ. Code, § 3439.08, subd. (a); *Sobel Bldg. Dev. Partners v. Broach (In re Sexton)* (Bankr. N.D. Cal. 1994) 166 B.R. 421, 427 [Civil Code section 3439.08, subdivision (a) provides a defense to a subsequent transferee "only if its transferor (or someone earlier in the transfer chain) received its transfer in good faith and for reasonably equivalent

16

value"].) Thus, the CP18 defendants' liability depends on the alleged fraudulent transfers in 2007, not the CP18 defendants' supposed petitioning activity in the federal action.

Contrary to the CP18 defendants' contentions, the receiver's motion and joinder are incidental to Tri Tool's claim that CP3's assets were transferred to avoid paying the note. Put another way, "[a]ny assertedly protected activity is not the root of the complaint; it is merely the setting in which the claims arose." (*Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1392.)

We therefore conclude that the CP18 defendants' receipt of CP18's assets was not an act in furtherance of the CP18 defendants' right of petition or free speech. (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 92 ["The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's activity that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning" (italics omitted)].) We agree with the trial court that the CP18 defendants have not met their initial burden of showing the complaint arose from protected activity.

Because we conclude that the CP18 defendants have failed to make a threshold showing that Tri Tool's causes of action arise from protected activity, we need not consider whether Tri Tool has demonstrated a probability of prevailing on the merits. (*City of Cotati v. Cashman, supra,* 29 Cal.4th at pp. 80-81; *Coretronic Corp. v. Cozen O'Connor, supra,* 192 Cal.App.4th at p. 1393.)

17

## III.  DISPOSITION

The judgment is affirmed.  Respondent Tri Tool Inc. shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278 (a)(1) & (2).)


/S/

_____

RENNER, J.



We concur:



/S/

_____

RAYE, P. J.



/S/

_____

ROBIE, J.