Filed 8/15/22  Yun v. Hong CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SOK HUN YUN et al., | B314201 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 20STCV09255) |
| v. | |
| CHRIS YONG HONG et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.
Affirmed in part and reversed in part with directions.

Mark Waecker for Plaintiffs and Appellants.

Lee & Associates, Yong Bom Lee and Hyong C. Kim for Defendant and Respondent Sang Ur.

Safarian Choi & Bolstad, David C. Bolstad and Christopher A. Johnson for Defendants and Respondents Chris Yong Hong, Jamie Park, Audrey Jung & Propent Real Estate, Inc.

Prindle, Goetz, Barnes & Reinholtz, Jack R. Reinholtz and Gopal S. Patel for Defendants and Respondents Eon Escrow, Inc. and Deborah Koh.

Law Offices of Alex Cha and Alex Cha for Defendant and Respondent NMSI, Inc.

Christopher G. Weston, in pro. per., for Defendant and Respondent.

——————————————

This case arises out of an alleged fraudulent transfer of real property. In prior litigation, plaintiffs Sok Hun Yun and Sung Yun Ahn (plaintiffs) obtained a verdict of nearly $5.5 million against defendants Bae Guen Song and Jung Sook Song (the Songs). Before a judgment was entered in that case, the Songs allegedly sold their sole asset, a parcel of real property located in Los Angeles, California, in a private sale and transferred the proceeds of the sale to bank accounts in South Korea. When plaintiffs learned of the sale, they sued the Songs, the Songs' attorney, the buyers of the property, and individuals who assisted with the sale (the real estate agents, escrow agent, and lender) for fraudulent transfer, fraud, and quiet title. The Songs did not appear in that action, but the remaining defendants demurred, and the trial court sustained the demurrers without leave to amend. Plaintiffs have appealed from the resulting judgment of dismissal.

We reverse in significant part. As we discuss, although plaintiffs have not adequately pled fraud or quiet title, they have

2

stated a claim for conspiracy to violate the Uniform Voidable Transfers Act, Civil Code[1] section 3439 et seq., against the buyers, the Songs' attorney, the real estate agents, and the escrow agent. We therefore will reverse as to those parties. Plaintiffs have not adequately stated a claim against the buyers' lender, and thus we will affirm the judgment of dismissal as to the lender.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     The personal injury action.

In 2017, Sok Hun Yun was severely injured on property owned by the Songs. Yun and his wife, Sung Yun Ahn, sued the Songs for personal injury (the personal injury action). The parties agreed to separately try liability and damages, and in September 2019, a jury found the Songs liable for plaintiffs' injuries.

The damages portion of the trial was set to begin on November 15, 2019. However, on November 14, 2019, the Songs' attorney, Christopher Weston, advised the court through an associate that he had suffered a heart attack and could not proceed as scheduled. The court twice continued the trial, to December 9, 2019, and then to January 14, 2020. Trial resumed in January 2020, and on January 16, 2020, the jury returned a verdict for plaintiffs of nearly $5.5 million. The trial court subsequently entered a judgment for plaintiffs of more than $6 million.

---

[1]     All subsequent undesignated statutory references are to the Civil Code.

## II.   The fraudulent conveyance actions.

In November 2019, plaintiffs filed a fraudulent conveyance action against the Songs and others.  That action (the first fraudulent conveyance action) alleged that after plaintiffs' injury, the Songs fraudulently transferred a piece of real property (the Victoria Street property) to make it unavailable to creditors, including plaintiffs.

Plaintiffs filed the present action against the Songs and others on March 6, 2020 (the present action).  The operative first amended complaint (FAC) alleges that after the jury returned a liability verdict in the personal injury action, the Songs began making efforts to secretly sell their sole remaining asset, a parcel of real property located at 1125 Third Avenue in Los Angeles (the Third Avenue property or the property).  The Songs privately listed the property and, on December 27, 2019, sold it to Chris Wong Hong and Jamie Park (the buyers) for $1.72 million, which was several hundreds of thousands of dollars less than the property was worth.  The grant deed transferring the property to the buyers was recorded on January 6, 2020.

The FAC asserts four causes of action.  The first cause of action, for fraudulent transfer against the Songs and the buyers, alleges that the Songs fraudulently transferred the property to the buyers in violation of section 3439 et seq., and the buyers are not bona fide purchasers for value because they purchased the property for less than its fair market value and knew or should have known about the underlying personal injury judgment.  The second cause of action, for fraud against attorney Christopher Weston and Western Law Connection, Corp. (collectively, Weston), alleges that Weston intentionally mispresented his health condition to plaintiffs and the court, assisted the Songs in

fraudulently marketing and selling the property, collected a portion of the sale proceeds, and falsely represented to the court in January 2020 that the Songs still owned the property. The third cause of action, for fraud, is asserted against a variety of third parties alleged to have assisted with the sale and transfer of the property: Eon Escrow, Inc. and Deborah Koh (escrow agents); NMSI, Inc. (lender); Propent Real Estate, Inc., B&B Investment Properties, LLC, and Audrey Jung (buyers' agent); and Sang Ur and Sang Ur Realty Company, Corp. (sellers' agent) (collectively, the real estate defendants).[2] The third cause of action alleges that each of the real estate defendants assisted in transferring the property, which transfer they knew or should have known was fraudulent. Finally, the fourth cause of action, for quiet title against the buyers, seeks a declaration that plaintiffs are entitled to possession of the property in partial satisfaction of their judgment.

## III. Demurrers; present appeal.

The Songs did not file an answer to the FAC, and plaintiffs sought a default judgment against them.[3] The remaining defendants demurred. As to the first and fourth causes of action, the buyers asserted that the FAC failed to state a claim against them for fraudulent conveyance because it did not allege that plaintiffs attempted to collect on the final judgment against the

---

[2]     The FAC also named AMP Management Company (AMP) and Provident Title Company (Provident) as defendants. AMP and Provident appear not to have demurred to the FAC and are not parties to this appeal.

[3]     The Songs are not parties to the present appeal.

5

Songs, that the Songs or the buyers knew or should have known that the property's value would be less than the personal injury judgment, or that the buyers conspired with the Songs. The buyers further asserted that plaintiffs lacked standing to assert a quiet title claim because the FAC did not allege that plaintiffs held title to the property. As to the second and third causes of action, attorney Weston and the real estate defendants asserted that the fraud causes of action were not alleged with sufficient particularity, and Weston asserted that plaintiffs had failed to comply with the prefiling provisions of section 1714.10, which requires court leave to file a claim alleging a conspiracy between an attorney and a client.

Plaintiffs opposed the demurrers and sought leave to file a second amended complaint (SAC). Plaintiffs asserted that when they filed their original complaint in March 2020, they knew very little about the transfer of the property to the buyers, but they since had learned more through discovery "and are now prepared to address all the concerns raised by all Defendants in their Motions in a proposed Second Amended Complaint." The proposed SAC alleged just two causes of action: (1) fraudulent conveyance against the Songs, the buyers, Weston, and the real estate defendants; and (2) quiet title against the buyers and lender.

The trial court sustained the demurrers without leave to amend on June 15, 2021. As to the first cause of action (fraudulent conveyance), the court found that the only factual allegations against the buyers "are that [the buyers] bought the property and . . . asked for a loan. Plaintiffs have not alleged specific facts as to each defendant." As to the second cause of action (fraud against attorney Weston), the court found that

6

plaintiffs "emphasize in their pleadings and represented to the Court in oral arguments that this is a conspiracy case," but failed comply with the pre-filing requirements of section 1714.10. As to the third cause of action (fraud against the real estate defendants), the court found that plaintiffs had not alleged specific factual allegations regarding each defendant. As to the fourth cause of action (quiet title), the court found that plaintiffs lacked standing to seek to quiet title. Finally, the court denied plaintiffs leave to amend, explaining that "there are no valid causes of action against these defendant parties. Even while proposing an amended complaint, plaintiffs have not sought leave of court to comply with . . . section 1714.10. The general allegation of a fraud conspiracy with multiple spokes all causing the wheel of conspiracy to be spinning is not presently sustainable nor is it likely to function for liability purposes."

The court entered a judgment of dismissal as to the buyers, Weston, the buyers' agent, and the Songs' agent on June 15, 2021. Plaintiffs timely appealed.

## DISCUSSION

Plaintiffs contend the trial court erred by sustaining the demurrers because all of the claims were properly pled and the SAC corrected any defects in the FAC. As we discuss, we agree with plaintiffs in part.

## I. Standard of review.

It is well established that a demurrer tests the legal sufficiency of a complaint. On appeal from a dismissal entered after an order sustaining a demurrer, " 'we review the order de novo, exercising our independent judgment about whether the [complaint] states a cause of action as a matter of law.

7

[Citations.] We give the [complaint] a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citations.] We deem to be true all material facts that were properly pled. [Citation.] We must also accept as true those facts that may be implied or inferred from those expressly alleged. [Citation.] We may also consider matters that may be judicially noticed, but do not accept contentions, deductions or conclusions of fact or law.' " (*Simonyan v. Nationwide Ins. Co. of America* (2022) 78 Cal.App.5th 889, 896.) (*Simonyan*).)

" 'If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect.' (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)" (*Simonyan, supra*, 78 Cal.App.5th at p. 896.)

## II. Fraudulent conveyance (first cause of action).

Plaintiffs' first cause of action seeks to void the Songs' transfer of the property to the buyers as a fraudulent transfer in violation of the Uniform Voidable Transactions Act (UVTA), section 3439 et seq.[4] We conclude plaintiffs adequately stated a claim for a violation of the UVTA against the buyers, and thus

---

[4] The UVTA formerly was known as the Uniform Fraudulent Transfer Act. (See *Nautilus, Inc. v. Yang* (2017) 11 Cal.App.5th 33, 36 & fn. 2.)

8

the trial court erred by sustaining the demurrer to the first cause of action.

The UVTA was intended " ' "to prevent debtors from placing property which legitimately should be available for the satisfaction of demands of creditors beyond their reach . . . ." ' [Citation.]" (*Optional Capital, Inc. v. DAS Corp.* (2014) 222 Cal.App.4th 1388, 1401 (*Optional Capital*).)  It provides that a transfer is voidable as to a creditor if the transfer was made with actual or constructive fraudulent intent.  *Actual fraud*, as defined in section 3439.04, subdivision (a)(1), is "actual intent to hinder, delay, or defraud any creditor of the debtor."  *Constructive fraud*, as defined in section 3439.04, subdivision (a)(2), requires a showing that the debtor did not receive "reasonably equivalent" value for the transfer, and the transfer was made when the debtor *either* "(A) [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" *or* (B) the debtor "[i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."  Section 3439.04 has been construed to mean that a transfer is fraudulent if the provisions of either subdivision (a)(1) or subdivision (a)(2) are satisfied.  (*Optional Capital*, *supra*, 222 Cal.App.4th at pp. 1401–1402; *Monastra v. Konica Business Machines, U.S.A., Inc.* (1996) 43 Cal.App.4th 1628, 1635; *Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1020.)

In determining actual intent under section 3439.04, subdivision (a)(1), "consideration may be given, among other factors, to any or all of the following:

"(1)    Whether the transfer or obligation was to an insider.

9

"(2)     Whether the debtor retained possession or control of the property transferred after the transfer.

"(3)     Whether the transfer or obligation was disclosed or concealed.

"(4)     Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

"(5)     Whether the transfer was of substantially all the debtor's assets.

"(6)     Whether the debtor absconded.

"(7)     Whether the debtor removed or concealed assets.

"(8)     Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

"(9)     Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

"(10)   Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

"(11)   Whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor."  (§ 3439.04, subd. (b).)

The FAC pleads actual fraud, alleging that the Songs "transferred the subject real property to [the buyers] with the *actual intent* to hinder, delay, and/or defraud Plaintiffs in violation of [section] 3439 et seq."  (Italics added.)  It further alleges five of the indicia of fraud specified in section 3439.04, subdivision (b)—namely, that the transfer was concealed (¶ 41 [Songs "began their effort to secretly sell the subject real property with the aid and assistance of [the buyers]"]); the transfer was made after the debtor was sued (¶ 36 [Songs marketed the

10

property "after the first jury verdict [was] rendered"]); the property transferred was substantially all of the debtor's assets (¶ 53 [the property was "the only asset of [the Songs] to which Plaintiffs could look to satisfy their judgment"]); the property was sold for less than its fair market value (¶¶ 37, 46 [the property was worth more than $2 million, but was sold for $1.72 million]); and the transfer was made shortly before a substantial debt was incurred (¶¶ 33, 46 [the property was transferred in late December 2019, less than a month before a jury returned a $5.5 million judgment against the Songs]). (§ 3439.04, subds. (b)(3), (4), (5), (8), (10).) Finally, the complaint alleges that the buyers did not take the property "in good faith" (§ 3439.08, subd. (a)), but instead "knew or should have known about Plaintiffs' underlying judgment and nonetheless purchased the subject real property for less than the fair market value."

Although the buyers assert that these allegations do not adequately state a claim against them under the UVTA, they do not identify any statutory element of the cause of action that is missing. We have independently reviewed the complaint and are satisfied that it adequately pleads the essential elements of intentional fraudulent transfer under section 3439.04.

The buyers further assert that the fraudulent transfer claim fails because plaintiffs have not alleged that they tried to collect on the judgment. But *Rossen v. Villanueva* (1917) 175 Cal. 632 and *Thomas v. Lavery* (1932) 125 Cal.App. 666, 667, on which the buyers rely for this proposition, are no longer good law. As our Supreme Court has explained, California law previously permitted a transfer to be set aside only by a creditor who had a specific lien on the property or had prosecuted his claim to judgment, but "[u]nder the Uniform Fraudulent Conveyance Act

11

[now, the UVTA] now in force in this state *no judgment or lien is necessary.*" (*In re Estate of Kalt* (1940) 16 Cal.2d 807, 811, italics added; see also *Weisenburg v. Cragholm* (1971) 5 Cal.3d 892, 896 ["it is no longer necessary that a creditor reduce his claim to judgment before seeking the benefit of the remedy"]; *Rupp v. Kahn* (1966) 246 Cal.App.2d 188, 197 ["California law originally permitted proceedings by way of creditors' bills to attack fraudulent conveyances only where the plaintiff had a specific lien on the property or had reduced his claim to judgment. But under [current law], it is sufficient that the claims have matured. . . . In fact even the holder of an unmatured claim may . . . bring an action for protective relief."]; *Liuzza v. Bell* (1940) 40 Cal.App.2d 417, 429 [to state a claim for fraudulent conveyance, "[i]t [is] not necessary that [creditors] should have impressed a lien upon the property prior to the institution of the fraudulent conveyance action. All that is necessary is that the creditor be in a position to levy execution."]; see also *Strangman v. Duke* (1956) 140 Cal.App.2d 185, 191 [noting California's adoption of Uniform Fraudulent Conveyance Act in 1939]; Leg. Com. com. (1986), West's Ann. Civ. Code, foll. § 3439.07, com. 6 [noting " 'old practice' " of requiring creditor to obtain judgment and attempt to execute before proceeding in equity to set aside a transfer; current law provides an " ' additional optional remedy' "].)

Next, citing section 3439.04, subdivision (a)(2)(B), the buyers assert that the fraudulent transfer claim fails because plaintiffs did not allege that the buyers or sellers "knew or should have known that the Property's value would be less than the Monetary Verdict." But as we have said, a fraudulent conveyance plaintiff may allege *either* actual fraud under

12

section 3439.04, subdivision (a)(1) *or* constructive fraud under section 3439.04, subdivision (a)(2)—it need not allege both. Because the first amended complaint alleged actual fraud, plaintiffs were not required to also allege the elements of constructive fraud, including that the sellers and buyers "believed or reasonably should have believed that the debtor would incur . . . debts beyond the debtor's ability to pay as they became due."  (§ 3439.04, subd. (a)(2)(B).)

Finally, the buyers assert that the fraudulent conveyance claim fails because plaintiffs have not alleged that the buyers conspired with the Songs to defraud them.  But conspiring to defraud creditors is not an element of a creditor's fraudulent conveyance cause of action against a transferee.  (See § 3439.04 [describing elements of fraudulent conveyance claim].)  Instead, the transferee's good faith is an affirmative defense as to which the transferees (here, the buyers), *not* the plaintiffs, have the burden of proof.  (See § 3439.08, subds. (a), (f)(1) [transfer not voidable against a transferee who took in good faith and for a reasonably equivalent value; burden of proving these factors is on "[the] party that seeks to invoke" them]; see also *Filip v. Bucurenciu* (2005) 129 Cal.App.4th 825, 838 [conspiracy allegations may "bolster and explain [a] plaintiff's claims under the UFTA," but they "ha[ve] no effect on the judgment"].)

For all of these reasons, we conclude that the first cause of action adequately states a claim against the buyers for fraudulent transfer.

## III. Fraud claims.

### A. Fraud by attorney Weston (second cause of action).

The second cause of action alleges fraud by attorney Weston. Specifically, it alleges that Weston "intentionally misrepresented his health condition to Plaintiffs and the Court to further the fraud of his clients," "conspired with and assisted [the Songs] in fraudulently marketing and conveying the subject real property to [the buyers]," "falsely represented to the Court [in January 2020] that [the Songs] still owned the subject real property," and "made multiple fraudulent misrepresentations to [the real estate defendants] and their agents in order to facilitate the fraudulent conveyance of the subject real property."

Weston asserted two grounds for his demurrer: (1) the trial court lacked jurisdiction over the causes of action because plaintiffs failed to comply with the prefiling procedures of section 1714.10, and (2) the fraud cause of action was not alleged with sufficient particularity. The trial court sustained the demurrer based on the first ground only, finding that plaintiffs failed to comply with the prefiling requirements of section 1714.10. We consider both issues.

### 1. Prefiling requirement of section 1714.10.

Section 1714.10, subdivision (a) provides: "No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court

14

determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action." Failure to obtain a court order where required by subdivision (a) "shall be a defense to any action for civil conspiracy filed in violation thereof." (*Id.*, subd. (b).) This section does not apply to a cause of action against an attorney for civil conspiracy with his client where "(1) the attorney has an independent legal duty to the plaintiff, or (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain." (*Id.*, subd. (c).)

Plaintiffs assert that section 1714.10 does not apply because the second cause of action did not allege conspiracy and the alleged conduct went well beyond Weston's performance of a professional duty to serve his client. We agree in part.

As noted above, the prefiling requirements of section 1714.10, subdivision (a) apply only to a "cause of action against an attorney for a civil conspiracy with his or her client *arising from any attempt to contest or compromise a claim or dispute*, and which is based upon the attorney's representation of the client." (Italics added.) Plaintiffs' allegations that Weston assisted the Songs "in fraudulently marketing and conveying the subject real property to [buyers] and collected part of the sale proceeds" and made fraudulent misrepresentations to the real estate defendants to facilitate the fraudulent conveyance of the property do not arise out Weston's attempt to contest or compromise a claim or dispute. They thus are not subject to section 1714.10's prefiling requirements. (See, e.g., *Cortese v. Sherwood* (2018) 26 Cal.App.5th 445, 457 [allegations that attorneys siphoned off estate's assets through fraudulent estate planning, including the

15

misappropriation of estate assets through the diversion of those assets to entities created and controlled by the defendants, were not subject to § 1714.10]; *Aghaian v. Minassian* (2020) 59 Cal.App.5th 447, 460 [§ 1714.10 did not apply where attorney was alleged to have acted for his own personal gain by helping his father quitclaim real property to his mother, and then helping his mother sell the real property and purchase new property].)

We reach a different conclusion with regard to the allegations that Weston intentionally misrepresented to the court in November and December 2019 that he could not begin the second stage of trial because he had suffered a heart attack, and in January 2020 that the Songs still owned the property. These alleged misrepresentations plainly were made during an attempt "to contest . . . a claim or dispute": They were made to the court, in connection with a case then being tried. As such, they are subject to the prefiling requirements of section 1714.10. Because plaintiffs did not comply with section 1714.10, these allegations cannot form the basis for a fraud cause of action.

## 2. Specificity of fraud allegations.

" 'The elements of fraud . . . are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 (*Lazar*).)

" 'In California, fraud must be pled specifically; general and conclusory allegations do not suffice. [Citations.]  "Thus ' "the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect." ' [Citation.]  [¶] This particularity requirement necessitates pleading *facts* which 'show how, when,

16

where, to whom, and by what means the representations were tendered.' " ' (*Lazar*, *supra*, 12 Cal.4th at p. 645.)" (*Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 837–838.) "The specificity requirement serves two purposes. The first is notice to the defendant, to 'furnish the defendant with certain definite charges which can be intelligently met.' [Citations.] The pleading of fraud, however, is also the last remaining habitat of the common law notion that a complaint should be sufficiently specific that the court can weed out nonmeritorious actions on the basis of the pleadings. Thus the pleading should be sufficient ' "to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud." ' " (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216–217, superseded by statute on other grounds as stated in *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228.)

Weston asserts that the allegations that he assisted the Songs in fraudulently marketing and conveying the real property and made fraudulent misrepresentations to the real estate defendants to facilitate the fraudulent conveyance of the property are not pled with sufficient particularity, and we agree. Plaintiffs do not specifically allege *what* the nature of Weston's alleged misrepresentations were or *when* and *to whom* they were made. Nor do plaintiffs allege that the real estate defendants relied on the alleged misrepresentations in marketing and conveying the property to the buyers. Accordingly, the allegations are not sufficiently specific to satisfy California's pleading requirements.

For all of these reasons, the trial court properly sustained the demurrer to the second cause of action.

17

## B. Fraud by the real estate defendants (third cause of action).

The third cause of action alleges fraud by the real estate defendants. Specifically, it alleges that these defendants "conspired with and/or assisted [the Songs, the buyers, and Weston] in executing and completing the fraudulent transfer of the subject real property," including by assisting with the marketing of the property, lending $900,000 to the buyers, opening and closing escrow, notarizing the grant deed, and preparing indemnity agreements. Plaintiffs further allege that the real estate defendants "knew or should have known that the representations made by [Weston] were false and that the transfer of the subject real property was fraudulent."

Plaintiffs assert that the trial court erred in sustaining the demurrer to this cause of action because the complaint alleged "in painstaking detail" the conduct that resulted in the fraudulent transfer. We do not agree. As described above, to survive a demurrer, a plaintiff must plead the elements of fraud—a misrepresentation, knowledge of falsity, intent to defraud, justifiable reliance, and resulting damage—with specificity. Plaintiffs did not do so. While they specifically alleged *Weston's* asserted misrepresentations, they did not allege any specific misrepresentations made by the real estate defendants. Further, the allegations that the real estate defendants conspired with Weston to defraud the plaintiffs cannot survive because plaintiffs did not adequately plead fraud by Weston. Accordingly, the trial court properly sustained the demurrer to the third cause of action.

18

### C.    Leave to amend.

Concurrently with their opposition to defendants' demurrers, plaintiffs sought leave to file a SAC, which eliminated the fraud causes of action entirely, but expanded the fraudulent transfer cause of action to include Weston and the real estate defendants.  In brief, the amended fraudulent transfer cause of action alleged that all defendants conspired to assist the Songs in surreptitiously selling the property and transferring the sale proceeds to an account in South Korea.  For the reasons that follow, we conclude that the SAC adequately pled conspiracy to fraudulently transfer as to many of the defendants, and thus the trial court erred by denying leave to amend as to them.

" 'Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.' (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd*. (1994) 7 Cal.4th 503, 510–511.)" (*AREI II Cases* (2013) 216 Cal.App.4th 1004, 1021 (*AREI II*).)  "To support a conspiracy claim, a plaintiff must allege the following elements:  '(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct.' [Citations.]"  (*Id*. at p. 1022.)

"It is well settled that ' "[b]are" allegations and "rank" conjecture do not suffice for civil conspiracy.' [Citation.]  A party seeking to establish a civil conspiracy 'must show that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it. [Citation.]  It is not enough that the [conspirators] knew of an

19

intended wrongful act, they must agree—expressly or tacitly—to achieve it.' [Citation.]  It must be recognized, however, that because of the very nature of a conspiracy, 'its existence must often be inferentially and circumstantially derived from the character of the acts done, the relations of the parties and other facts and circumstances suggestive of concerted action.' [Citation.]  While a complaint must contain more than a bare allegation the defendants conspired, a complaint is sufficient if it apprises the defendant of the 'character and type of facts and circumstances upon which she was relying to establish the conspiracy.' [Citations.]"  (*AREI II*, *supra*, 216 Cal.App.4th at p. 1022.)

There is no real dispute that the SAC adequately alleges the second and third elements of a conspiracy claim—that is, that the Songs fraudulently conveyed the property to avoid plaintiffs' collection efforts, and the plaintiffs were damaged as a result.  Weston and each of the real estate defendants contend, however, that the complaint does not allege with sufficient specificity *their* participation in the alleged conspiracy—i.e., that they entered into agreements with the Songs and the buyers to assist in the alleged fraudulent transfer.

We agree that the SAC does not adequately allege conspiracy to commit a fraudulent transfer against the lender.  Although the complaint alleges generally that the defendants entered into agreements with the Songs "to open a private escrow, to keep the escrow off the books and hidden from the public, to not list the property with any public listing service, to arrange for the proceeds from the transfer to be sent to a hidden account within the Republic of South Korea . . . and not to publicize, in any manner, the fact that the [property] was for sale,

was in escrow, or had been transferred," it does not allege any specific acts taken by the lender from which an agreement to participate in a fraudulent transfer can be inferred. Leave to amend therefore was properly denied as to the lender.[5]

We reach a different result with regard to Weston and the other real estate defendants. In addition to alleging that these defendants entered into agreements with the Songs to secretly transfer the property so it could not be used to satisfy plaintiffs' judgment, the SAC specifically alleges the following:

*As to Weston*: The SAC alleges that on about November 11, 2019, plaintiffs filed and served the first fraudulent conveyance action. Weston represented the Songs in that action, which alleged that after Sok Hun Yun was injured on the Songs' property, the Songs sold their Victoria Avenue property and transferred the proceeds of the sale to accounts in South Korea. Just four days after the first fraudulent conveyance action was filed, Weston took steps to delay the damages phase of the trial in the personal injury action by seeking a continuance. Although Weston was ordered by the court to file a declaration of proof of his asserted medical condition, he never did so. On December 9, 2019, Weston again took steps to delay the damages phase of the trial, and he again failed to file a declaration of proof of his asserted medical condition.

---

[5] Plaintiffs' counsel suggested at oral argument that plaintiffs could amend the complaint to allege conspiracy to commit fraudulent transfer against the lender. Because this assertion was not timely made, we will not address it on the merits. (See, e.g., *Shimmon v. Franchise Tax Bd.* (2010) 189 Cal.App.4th 688, 694.)

The SAC further alleges that Weston participated in settlement discussions in plaintiffs' personal injury action on the Songs' behalf, which discussions "became more active" after the jury's liability verdict on September 25, 2019. During settlement discussions, "Weston affirmed that the [Songs] still owned the [Third Avenue property] and the transfer of this valuable asset was the centerpiece of these discussions. Weston's conduct at this time was not truthful and was designed to cover up the secret sale moving forward. All settlement discussions stopped on or about January 6, 2020, when the secret escrow closed and after the proceeds had been transferred to the hidden bank accounts in the Republic of South Korea."

*As to the buyers' and sellers' agents*: The SAC alleges that the Songs "never listed the [property] in any commercial listing service on the general real estate market in order to conceal their efforts to secretly sell the [property]." Further, the Songs sold the property for $1,720,000, "an amount below fair market value." In doing so, they "turned down larger offers and engineered the transfer to [the buyers] because they were willing to knowingly facilitate and engage in the [Songs'] scheme and plan." And, the sellers agreed in writing to indemnify the buyers and their agents from any liability "accruing as a result of the transfer in light of the imminent judgment against the [Songs] in the Personal Injury case." For their parts in the sale of the property, Propent received a commission of $32,000, B&B received a commission of $2,400, and Ur received a commission of $34,000.

*As to the escrow agents*: On information and belief, the escrow agents "had actual knowledge of the Personal Injury case because [they] demanded and received an indemnity agreement from the [Songs and the buyers], thereby confirming that they

22

were on notice that the [Songs] were parties in pending litigation." The escrow was kept "off the books and hidden from the public," and the proceeds of the sale were sent "to a hidden account within the Republic of South Korea."

We conclude that these allegations are sufficient to state a conspiracy claim against Weston, the buyers' and sellers' agents, and the escrow agent. While we are mindful that bare allegations of conspiracy are insufficient, the SAC does more than merely allege that the defendants conspired to fraudulently transfer the property. Instead, as we have described, plaintiffs have pleaded facts—specifically, that Weston intentionally delayed the damages phase of the personal injury trial, the real estate agents and escrow agent knowingly participated in an undisclosed sale of the property for less than market value and the transfer of the sale proceeds to South Korea, and the real estate agents demanded written indemnity agreements—from which we believe a factfinder could infer that Weston, the escrow agents, the sellers' agent, and the buyers' agent agreed to facilitate a nonpublic sale of the property for the purpose of defrauding the plaintiffs.

We further conclude that the claim as against Weston is not barred by section 1714.10. As we have said, section 1714.10 does not apply "where (1) the attorney has an independent legal duty to the plaintiff, or (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain." (§ 1714.10, subd. (c).) Plainly, Weston had an independent legal duty to the plaintiffs not to participate in a fraudulent transfer. (See *Rickley v. Goodfriend* (2013) 212 Cal.App.4th 1136, 1151 ["It is well established that an

23

attorney has an independent legal duty to refrain from defrauding nonclients"]; *Tatung Company v. Shu Tze Hsu* (C.D. Cal. 2016) 217 F.Supp.3d 1138, 1185 [same].) Further, Weston's alleged acts went well beyond his professional duty to the Songs to present their defense in the personal injury action, including helping the Songs sell their sole asset to avoid plaintiffs' collection efforts. These allegations are not within the plain language of section 1714.10, and thus plaintiffs were not required to seek court approval before filing their claim against Weston.

For all of these reasons, we conclude that the trial court abused its discretion by denying plaintiffs leave to amend their complaint to assert a conspiracy claim against Weston, the buyers' agents, the Songs' agent, and the escrow agent.

## IV.    Quiet title (fourth cause of action).

The fourth cause of action is asserted against the buyers and "any and all persons, known or unknown, claiming any legal or equitable right, title, estate, lien or interest in" the property. It seeks to quiet title to the property in plaintiffs, asserting that plaintiffs, "as creditors, are entitled to possession of the subject real property and [to] execute on this asset as a partial satisfaction of their judgment."

The trial court sustained the demurrer to the fourth cause of action because it found that plaintiffs lacked standing to assert quiet title. We agree. Code of Civil Procedure section 760.020, subdivision (a) provides that an action to quiet title "may be brought under this chapter to establish title against adverse claims to real or personal property or any interest therein," and section 760.010, subdivision (a) defines "claim" to include "a legal or equitable right, title, estate, lien, or interest in property or

24

cloud upon title." But the FAC does not allege that plaintiffs have title to or a lien on the property; instead, it asserts that by virtue of the judgment entered in the underlying case in March 2020, plaintiffs "*would have* been able to levy on the [property] in order to partially satisfy their judgment" (italics added) had the Songs not previously transferred the property to the buyers. In other words, the first amended complaint alleges the *right* to acquire title, not the existence of title.

Plaintiffs do not assert any authority for the proposition that a claim of this kind supports a cause of action for quiet title, and we are not aware of any. To the contrary, in *Stenzel v. Kronick* (1929) 102 Cal.App. 507, the court considered whether the plaintiff, who possessed a money judgment against the defendant, had the right to pursue a quiet title action with regard to a piece of real property held by the defendant. The court noted that the plaintiff's sole claim to the property was by virtue of a general money judgment that under then–existing law gave him a statutory lien on all the real property of the judgment debtor which was situated in the county where the judgment was entered. (*Id*. at p. 508.) The court concluded that the statutory lien was not sufficient to support a cause of action for quiet title, explaining: "The general lien which is created upon all the real property of the judgment debtor . . . is not such a vested interest in a particular piece of real property as authorizes the maintenance of a suit to quiet title. A specific lien attached by decree of a court upon a particular property for the satisfaction of a judgment would suffice for this purpose. But the statutory lien created by the entry of a mere money judgment is too general in its nature to furnish such a claim of title as may constitute the foundation of a suit to quiet title." (*Id*. at pp. 508–509; see also

30 Cal. Jur. 3d Enforcement of Judgments § 61 [judgment lien does not create an actual interest in the real property; the lien is "general, not specific."].)

The present case is analogous to *Stenzel*. Although plaintiffs have a judgment against the Songs, that judgment did not give plaintiffs rights to any particular property owned by the Songs. Plaintiffs thus do not have an interest in the property within the meaning of Code of Civil Procedure section 760.020 and, as such, cannot seek to quiet title to it. The trial court therefore properly sustained the demurrer to the cause of action for quiet title.

For the same reason, the trial court did not abuse its discretion by denying plaintiffs leave to amend. The SAC asserted a cause of action for quiet title against the buyers and the lender, but it did not allege any additional facts establishing plaintiffs' standing to assert this claim. Accordingly, the trial court properly denied plaintiffs' request for leave to amend the cause of action for quiet title.

## DISPOSITION

The judgment of dismissal is reversed as to defendants Chris Wong Hong, Jamie Park, Christopher Weston, Western Law Connection, Corp., Eon Escrow, Inc., Deborah Koh, Sang Ur, Propent Real Estate, Inc., B&B Investment Properties, LLC, and Audrey Jung. On remand, the trial court is directed to permit plaintiffs to file a second amended complaint as to these defendants. As to these defendants, plaintiffs are awarded their appellate costs.

The judgment is affirmed as to defendant NMSI, Inc. NMSI is awarded its appellate costs.

Respondents' requests to augment the record and for judicial notice, filed January 20, 2022, are denied.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, P. J.

We concur:

LAVIN, J.

ADAMS, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

27