Filed 12/29/23  Tahir v. Shah CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ABU TAHIR, | B323887 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. VC067198) |
| v. | |
| RAFIQ SHAH, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Olivia Rosales, Judge.  Reversed with directions.

Abu Tahir, in propria persona, for Plaintiff and Appellant.

Law Office of Henry B. LaTorraca, Henry B. LaTorraca for Defendant and Respondent.

_____

Abu Tahir sued Rafiq Shah for breach of a partnership agreement, alleging Shah failed to share profits from an ongoing joint venture. He appeals from a judgment entered after the trial court granted summary judgment on the ground the action was time-barred because Tahir knew that Shah failed to share profits beginning in 2003, approximately 15 years before Tahir filed suit. We reverse. When contractual obligations arise on a recurring basis, a cause of action accrues each time a new breach occurs, triggering a new limitations period. Accordingly, we conclude Tahir's lawsuit is time-barred only for those instances when Shah failed to share profits outside the appropriate limitations period.

## BACKGROUND

### A. Complaint

In 1999, Tahir and Shah entered into an oral partnership agreement in which Tahir agreed to contribute $5,000 toward the $50,000 purchase price of a grocery store known as Palomino Market (the market). Shah agreed to contribute the remaining $45,000 and run the market and pay Shah 10 percent of the profits.

On February 1, 2002, Shah created a corporation, Palomino Market, Inc., to which he transferred all ownership rights in the market without Tahir's knowledge.

Shah never paid Tahir any profits, but instead told him there were no profits.

On June 6, 2018, Tahir filed this action. In the third amended complaint, which is operative, Tahir asserted causes of action for breach of contract and conversion, and sought an accounting. Tahir asserted no fraud cause of action.

2

## B.    Discovery

At his deposition, Tahir was asked:  "And you also say that at least as of 2003, you knew that that business was making a profit, right?"  He responded, "Yes."  Tahir never sought to correct his response.

## C.    Summary Judgment

Shah moved for summary judgment on the grounds that the action was time-barred and no cause of action existed for conversion based on failure to pay a nonspecific, nonidentifiable sum of money.

In support of the motion, Shah adduced facts that basically tracked the allegations of Tahir's complaint, all but two of which Tahir admitted.  Only one is pertinent:  Tahir admitted in his deposition that he knew as of 2003 that the market was making a profit.

(Shah also asserted as material the fact that "At least as of 2003, [Tahir] knew that he was entitled to 10 percent of the net profit of the . . . Market."  Tahir purported to contest this fact but it was undisputed he *always* knew he was entitled to 10 percent of the profit—the oral agreement provided as much.  Therefore, this fact added nothing new, and was thus immaterial.)

In opposition to the motion, Tahir acknowledged that he admitted in deposition that he knew as of 2003 that the market was making a profit, but he attempted to qualify the admission by declaring he only "suspected" that was the case, and "did not yet possess any concrete proof or evidence" to that effect.  He declared that "because [he] trusted Shah, [he] did not insist on making demands for payment of [his] 10% share in the profits."  He later "found out that Shah had . . . been lying . . . regarding [Tahir's] 10% share in the profits of the business," and "had been

3

diverting and misusing funds from the store income and operations since 2003 . . . ."

The court found that Tahir knew as early as 2003 that the market was turning a profit. The court found that Tahir's claims all accrued at that time, and his complaint, filed 15 years later, was time-barred. Additionally, the court found that no cause of action for conversion could be grounded on failure to pay a nonspecific, nonidentifiable sum of money.[1] Accordingly, the court granted Shah's motion for summary judgment.

Tahir appealed from the order granting summary judgment but our clerk informed him that such an order was nonappealable and gave him an opportunity to cure the defect by securing a judgment. He did so.

## DISCUSSION

Tahir contends summary judgment was improper because evidence (his declaration) indicated that he did not actually know until 2016 that the market was making a profit. We reject Tahir's rationale but agree for a different reason that summary judgment was improper.

### A.      Preliminary Matters

1.      Premature Appeal

Shah invites us to dismiss the appeal as arising from a nonappealable order. We decline the invitation.

Tahir appealed from the order granting summary judgment, which is nonappealable. (Cf. Code Civ. Proc.,[2] § 437c,

---

[1] Tahir does not contest this portion of the ruling on appeal.

[2] Undesignated statutory references will be to the Code of Civil Procedure.

4

subd. (m)(1) [only a summary judgment is an appealable judgment].)  Therefore, the appeal was premature.

However, we "may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment."  (Cal. Rules of Court, rule 8.104(d)(2).)  "In exercising our discretion, we liberally construe a premature notice of appeal in favor of its sufficiency."  (*In re Marriage of Ankola* (2020) 53 Cal.App.5th 369, 375.)

Here, it is clear from the notice of appeal that Tahir intended to challenge the trial court's impending summary judgment, and it does not appear Shah was misled or prejudiced by Tahir's appeal from a nonappealable order.  We will therefore treat the premature notice of appeal as being filed immediately after entry of the judgment.

2.      Sufficiency of the Record

Shah argues that Tahir designated an inadequate appellate record because he failed to designate the third amended complaint, which entered the record not by way of any direct designation but only as an attachment to Tahir's request for judicial notice before the trial court and as an exhibit attached to his motion for summary judgment.  Curiously, Shah asks for no remedy in light of this deficiency, but in any event, we conclude the record suffices.  Although the third amended complaint was not discretely designated as part of the record, it was attached to two documents that *were* properly designated.  The record as a whole therefore adequately permits an informed review.

B.    **General Legal Principles**

A trial court properly grants summary judgment " 'if all the papers submitted show that there is no triable issue as to any

5

material fact and that the moving party is entitled to a judgment as a matter of law.'  (Code Civ. Proc., § 437c, subd. (c).)  A defendant may establish its right to summary judgment by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to the cause of action.  (§ 437c, subd. (p)(2).)"  (*Neiman v. Leo A. Daly Co*. (2012) 210 Cal.App.4th 962, 967.)  "Once the moving defendant has satisfied its burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to each cause of action.  [Citation.]  A triable issue of material fact exists where 'the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' "  (*Ibid*.)

On appeal, we apply an independent standard of review to determine whether a trial is required—whether the evidence favoring and opposing the summary judgment motion would support a reasonable trier of fact's determination in the plaintiff's favor on the cause of action or defense.  (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850.)  In doing so we view the evidence in the light most favorable to the party opposing summary judgment.  (*Id*. at p. 843; *Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139.)  We accept as true the facts shown by the evidence offered in opposition to summary judgment and the reasonable inferences that can be drawn from them.  (*Spitzer v. The Good Guys, Inc*. (2000) 80 Cal.App.4th 1376, 1385-1386.)

## C. Shah Made No Prima Facie Showing that the Action as a Whole is Time-Barred

Shah attempted to establish his right to summary judgment by establishing a complete defense:  The complaint was

6

time-barred.  He did this by adducing one material fact:  Tahir knew in 2003 that the market was turning a profit.  He reasoned that Tahir's claims therefore accrued in 2003, and the lawsuit, filed 15 years later, was hopelessly late.

The limitations period for breach of an oral contract is two years.  (§ 339(1).)

The limitations period for seeking an accounting is based on the underlying right giving rise to the necessity of the accounting.  (*Jefferson v. J. E. French Co.* (1960) 54 Cal.2d 717, 718-719.)  Here, the underlying right arises from breach of an oral contract.  The limitations period is therefore two years.

Tahir argues an accounting action is governed by the four-year catchall limitation of section 343, but "the primary purpose of the action is to recover money under the oral contract, and the nature of the right sued upon, not the form of action or the relief demanded, determines the applicability of the statute of limitations."  (*Jefferson v. J. E. French Co.*, *supra*, 54 Cal.2d at p. 718.)  "The accounting is merely ancillary to the perfection of plaintiff's right under the oral contract, and that aspect of the action should not operate to avoid the effect of a statute prescribing a period of limitation with respect to the right basically in issue."  (*Id*. at p. 719.)

A cause of action normally accrues at the time of breach of a duty, which then commences the limitations period.  (*Brewer v. Simpson* (1960) 53 Cal.2d 567, 593 [limitations period begins to run at the time set by a contract for performance]; *Cochran v. Cochran* (1997) 56 Cal.App.4th 1115, 1120.)

However, if the injured party has no immediate reason to suspect that a breach has occurred, the limitations period does not begin to run until "the plaintiff suspects or should suspect

7

that her injury was caused by wrongdoing, that someone has done something wrong to her. . . . [T]he limitations period begins once the plaintiff ' " 'has notice or information of circumstances to put a reasonable person on *inquiry* . . . .' " ' [Citation.] A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110-1111, fn. omitted.)

Here, Tahir admitted in deposition that he knew in 2003 that the market was turning a profit. He also knew from his agreement with Shah that Shah owed him 10 percent of the market's profits, and he knew that Shah had paid him nothing. That information put Tahir on notice of his injury, which obligated him to investigate, discover Shah's wrongdoing, and either file suit or sit on his rights.

Tahir argues that his declaration offered in opposition to summary judgment, to the effect that he did not know but only "suspected" the market was earning a profit, and "did not yet possess any concrete proof or evidence," raised a triable issue as to when his claims accrued. We disagree, for two reasons.

First, the suspicion itself obligated Tahir to investigate and act. (*Jolly v. Eli Lilly & Co.*, *supra*, 44 Cal.3d at p. 1111 [limitation period begins to run when the "plaintiff suspects or should suspect that her injury was caused by wrongdoing].") "A plaintiff need not be aware of the specific 'facts' necessary to

8

establish [his] claim; that is a process contemplated by pretrial discovery." (*Ibid.*)

Second, Tahir's declaration was incompetent to contradict his deposition testimony. "Admissions or concessions made during the course of discovery govern and control over contrary declarations lodged at a hearing on a motion for summary judgment." (*Visueta v. General Motors Corp.* (1991) 234 Cal.App.3d 1609, 1613; see *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 22.) In deposition, Tahir admitted he "knew" the market was turning a profit in 2003. This admission prevails over his later declaration that he only "suspected" the market turned a profit.

Tahir argues his declaration did not contradict his admission during deposition, but merely refined and complemented it. We disagree. Knowledge and suspicion are different, contradictory things.

Once Tahir either knew or suspected Shah was in breach of their oral agreement beginning in 2003, he was obligated to take timely action. He failed to do so, waiting 15 years to file suit. Therefore, some of his claims are time-barred.

But not all of them.

"[W]hen there are ongoing contractual obligations the plaintiff may elect to rely on the contract despite a breach, and the statute of limitations does not begin to run until the plaintiff has elected to treat the breach as terminating the contract." (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 489.) "In the context of successive breaches of a continuing contractual obligation, . . . ' "where the parties did not mutually abandon or rescind [the contract] upon a breach or successive breaches, the injured party could wait until the time arrived for a complete

9

performance by the other party and then bring an action for damages for such breaches.'" (*Id*. at pp. 489-490.)  A nonbreaching party is " ' "not bound to treat the contract as abandoned on the first breach of it, or on any particular breach, but ha[s] his election to still rely on it, and the statute of limitations could not begin to run until [he] had made [his] election." ' " (*Id*. at p. 490.)

The agreement here called for Shah's ongoing obligation to pay Tahir 10 percent of the market's profits.  A new breach thus occurred each time Shah failed to do so, and a discrete cause of action arose from each breach.  Although Tahir did not allege how many years after 2003 the market made a profit, it is reasonable to infer that 2003 was not the last time it did so.  In any event, any uncertainty about how long the market made a profit itself prevents summary judgment because it was Shah's obligation to establish that Tahir's claims were entirely time-barred, which he could not do without establishing that the *last* time he allegedly breached the partnership agreement occurred beyond the limitations period.

As it is, no disputed issue of material fact exists as to whether the action is time-barred as to any claims accruing beyond the two-year limitations period at issue here.  But triable issues do exist as to whether the action is barred for claims accruing within that period.  Because some such claims may exist, summary judgment was improper.  Summary *adjudication* was proper only as to claims made beyond the limitations period.

## D.     Conversion

The trial court granted summary adjudication as to Tahir's cause of action for conversion of 10 percent of the market's profits

on the alternate ground that no such cause of action will lie. Tahir does not contest this ruling on appeal.

We agree the ruling was proper. "The tort of conversion is an 'act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.' [Citations.] To establish conversion, the plaintiff must allege the plaintiff's right of ownership to the personal property, the defendant's control of the property in a manner inconsistent with the plaintiff's rights, and damages. [Citation.] 'A cause of action for conversion of money can be stated only where a defendant interferes with the plaintiff's *possessory interest* in a specific, identifiable sum, such as when a trustee or agent misappropriates the money entrusted to him.' [Citation.] '[U]nless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment,' money cannot be the subject of a cause of action for conversion." (*Optional Capital, Inc. v. DAS Corp.* (2014) 222 Cal.App.4th 1388, 1401.)

Here, Tahir alleged conversion not of a specific, identifiable sum of money but of 10 percent of whatever profits an accounting would determine the market earned. (Cf. *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179 ["An action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation"].) Therefore, summary adjudication of his conversion claim was proper.

## DISPOSITION

The judgment is reversed. The superior court is directed to vacate its order granting Shah's motion for summary judgment and enter a new order denying that motion but granting Shah's

11

motion for summary adjudication as Tahir's claim for conversion and as to any claim accruing more than two years before Tahir filed this lawsuit.  Each side is to bear its own costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.